Argued October 9, 1974, accused suspended for 18 months
January 7, 1975

In re Complaint as to the Conduct of

THOMAS D. KERRIGAN, *Accused.*

530 P2d 26

*Garth S. Ledwidge,* Portland, argued the cause and filed a brief for the accused.

*Gary N. Peterson,* of Peterson, Susak & Peterson, P. C., Portland, argued the cause for the Oregon State Bar. With him on the brief was Douglas M. Fellows, of Hedrick, Fellows & McCarthy, P. C., Portland.

[ 1 ]

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, SLOPER, and LEAVY, Justices.

PER CURIAM.

ACCUSED SUSPENDED FOR 18 MONTHS.

Three charges of unethical conduct have been lodged against the accused by the Oregon State Bar. The Trial Committee recommended the accused's disbarment for a period of three months. Each charge will be discussed separately.

The first charge contends the accused breached his contract for fees with the complainant, a client whom he represented in a personal injury action. The contract provided for a fee of 25 per cent of any settlement made before the filing of the case and one-third of any settlement made thereafter. The Bar alleged, and the accused admits, that the client's case was settled before any action was filed and that the accused, contrary to the contract, retained one-third of the settlement as his fee. However, the accused contends, in defense of his conduct, that the overcharge was caused by his mistaken belief that his client's case had been filed prior to the settlement and therefore the overcharge was unintentional. Upon evidence and testimony submitted, the Trial Committee found the accused guilty of the first charge.

The client testified that his case was settled in June 1973. During the time in which the insurance company's settlement draft was clearing the bank he was told by the accused in a telephone conversation, which concerned the sums that had to be paid out of the settlement, that the case had been filed. Thereafter, dur-

ing the accused's absence, he went to the accused's office and picked up a check for his share of the settlement from the accused's secretary. He then checked in both Multnomah and Clackamas counties and found that the case had not been filed. He again called the accused and asked if he was sure the case had been filed and was assured that it had been. He received from the accused no statement showing the manner in which the money received from the settlement was disbursed.

The accused testified that on May 21, 1973, the complaint was drawn and that shortly thereafter he received word that his mother was ill in Boston, Massachusetts. He left for Boston about the 26th or 27th of May and was gone for slightly more than two weeks. An offer to settle the case had been made to the insurance company prior to his departure, and, believing the complaint had been filed, he instructed his secretary concerning his fee if the case was settled while he was in Boston. A draft and release were received during his absence. His secretary secured the client's signature upon the release, deposited the draft for collection, and distributed the money when the draft cleared. The accused testified that he remembered only one occasion when his client questioned his fee and that his client never told him he had checked and found that the case had not been filed.

The accused said he received a letter in July from the Bar concerning his client's complaint but, thinking his client was in error and that the case had been filed, he did not bother to check it out. He first found the case had not been filed when he reviewed the files in October or November with an investigator who was representing the Bar. At one time he said he did not

then immediately refund the excess amount of the fee because he was provoked with his client for not having kept current on some other fees the client then owed him. However, he subsequently disclaimed failing to make the refund because of the money that was owed to him by his client. The amount he overcharged was much larger than the sum he said his client owed him. A formal complaint was filed in January 1974, and in February the $600 which the accused had overcharged his client was refunded.

The accused's testimony, as recounted above, concerning when the accused discovered the case had not been filed, was impeached by a copy of a letter dated July 20, 1973, wherein he wrote to the Bar, "I realize now that the matter was not filed as I had instructed." When asked about an accounting, he indicated that none was made to his client, nor was it required since he always paid all the expenses of litigation out of his fee, such expenses including filing fees, witness fees, and costs of depositions.

Beyond doubt, the accused breached his contract by willfully and wrongfully keeping $600 of his client's money from July 20, when he admitted by letter that the case had not been filed, until February of the following year, after the Bar had filed the formal complaint. He advances no adequate excuse for such unusual and bizarre conduct. At the very least, the accused is guilty of dishonoring his contract with his client in the most willful, flagrant and aggravated manner. He failed to pay over money he knew rightfully belonged to his client until he was coerced into doing so by a formal charge filed by the Bar. It is evident that he never would have so repaid the excess charge had no complaint been filed against him. We agree

with the Trial Committee that the accused is guilty of violating his contract for fees with his client.

The second charge against the accused includes three counts of lying to clients. The Trial Committee found, and we agree, that the accused was not guilty of the second and third counts and we will not include them in our discussion. The first count related to the overcharge of which we have heretofore found the accused guilty and was a claim that the accused twice lied to his client about his case having been filed. The Trial Committee found the accused guilty of this count.

There is no way to tell with absolute certainty whether the accused was or was not laboring under the misapprehension that a complaint had been filed. The accused is unable to produce a signed original of the complaint and demonstrates only purported copies. The client did not remember whether he had signed a complaint or not. If the case was going to be filed someone would have secured the client's signature. There is no testimony that the accused either secured the client's signature or directed someone else to do so. The accused called no secretary to back up his testimony of the preparation of the complaint nor does he give any excuse for not producing such a witness. The accused's conduct of knowingly failing to repay the overcharge from July 1973 to February 1974, as previously discussed, does nothing to persuade us that he was laboring under a mistake of fact at the time he overcharged his client. We agree with the finding of the Trial Committee.

The third charge is one of misconduct during a trial in which the accused represented a defendant in a first-degree murder case. The accused is charged with

failing to maintain a respectful attitude towards the trial court and with engaging in personal colloquies with the prosecuting attorney, thereby causing unnecessary delay and a disruption of orderly proceedings. Of this charge the Trial Committee also found the accused guilty.

A partial transcript of the trial, which was furnished this court, requires us to agree with the Trial Committee. The criminal trial in question was terminated five years prior to the bringing of this proceeding. The trial judge in the criminal case found the accused in contempt and, presumably, assessed proper punishment. There is no evidence that the accused has subsequently engaged in such conduct. Therefore, we are inclined to disregard the accused's guilt of this charge in our disposition of this proceeding.

Stealing by overcharging is still stealing. Having deliberately overcharged his client, the accused is suspended for a period of 18 months and such further time as is necessary to demonstrate that he is entitled to be reinstated as a member of the Bar.